### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| PROVIDENCE PEDIATRIC MEDICAL DAYCARE, INC., et al., | : : : | |
| Plaintiffs, | : : | Civil Action No. 10-cv-2799 (NLH)(KMW) |
| v. | : : | **OPINION** |
| POONAM ALAIGH, individually and as Commissioner of the New Jersey Department of Health and Senior Services, et al., | : : : : : | |
| Defendants. | : : | |

**APPEARANCES:**

Barry M. Kazan, Esquire
and
Rebecca Brazzano, Esquire
Thompson Hine L.L.P.
335 Madison Avenue
12th Floor
New York, N.Y. 10017
*Attorneys for Plaintiffs*

Vicki Ann Mangiaracina, Esquire
and
Zoe Jeanne McLaughlin, Esquire
Office of the New Jersey Attorney General
Division of Law
Richard J. Hughes Justice Complex
25 Market Street
P.O. Boxes 112 and 114
Trenton, N.J. 08625
*Attorneys for Defendants*

**HILLMAN, District Judge**

     The present matter comes before the Court by way of a complaint filed by Plaintiffs, Providence Pediatric Medical Daycare, Incorporated, and G.V., on behalf of her minor child, N.M., M.N., on behalf of her minor child, Z.N., T.P., on behalf

of her minor child, J.M., A.B., on behalf of her minor child,
T.B., D.L., on behalf of her minor child, J.B., and H.S., on
behalf of her minor child, C.T (collectively, "Plaintiffs").[1]
Named as defendants are Poonam Alaigh, individually and as
Commissioner of the New Jersey Department of Health and Senior
Services, the New Jersey Department of Health and Senior
Services, Jennifer Velez, individually and as Commissioner of the
New Jersey Department of Human Services, the New Jersey
Department of Human Services, John Guhl, individually and as
Director of the Division of Medical Assistance and Health
Services, and the Division of Medical Assistance and Health
Services (collectively, "Defendants").

Plaintiffs allege that Defendants have violated Medicaid
statutory law and the United States Constitution by promulgating
and enforcing regulations that circumscribe services provided by
Providence and received by Plaintiff-children.  In response to
Plaintiffs' allegations, Defendants have moved to dismiss the
complaint.

For the following reasons, Defendants' Motion to Dismiss is
denied.

## I.   JURISDICTION

This Court has jurisdiction over Plaintiffs' federal claims
under 28 U.S.C. § 1331.

---

[1] The abbreviations are intended to protect the identities of
the minors and their families involved in this suit.

## II.   BACKGROUND[2]

Overseen by the New Jersey Department of Health and Senior Services ("DHSS"), pediatric medical day care ("PMDC") is a program that provides medically necessary services to children who are six years old or younger and are technology-dependent or medically unstable.  PMDC facilities, licensed by the DHSS, offer comprehensive programs and services to assist those children with their medical, developmental, nutritional, psychological, social, and educational needs.  Should they choose to participate and comply with certain regulations, PMDC facilities can receive reimbursement from Medicaid for their services.

Medicaid is a program jointly administered by federal and state governments in which federal funding is allocated to assist participating states in providing medical assistance to certain low-income individuals.  A mandatory category of medical assistance that participating states must provide in order to qualify for Medicaid are early and periodic screening, diagnostic and treatment ("EPSDT") services for children.  See 42 U.S.C. § 1396d(a)(4)(B), (r).  Pursuant to its Medicaid program, the State of New Jersey furnishes EPSDT services to all Medicaid-eligible children under the age of twenty-one.  There are multiple sources or providers of EPSDT services in New Jersey, among them being

---

[2] Given that the present matter comes before the Court by way of Defendants' Motion to Dismiss, Plaintiffs' allegations are accepted as true and viewed in a light most favorable to Plaintiffs, as is required when reviewing such a motion.  See Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).

PMDC facilities.

For a child to be treated in a PMDC facility, the DHSS first determines whether that child satisfies the clinical eligibility requirements for the PMDC program.  In or around November 2009, new regulations were adopted to evaluate clinical eligibility for PMDC services.  See N.J.A.C. 8:87 *et seq.*  By implementing stricter requirements, the regulations narrow the number and types of children eligible for services in PMDC facilities and do not set forth any specific period of time by which requisite authorizations and assessments must be completed.  In addition, new regulations also required that PMDC providers staff their facilities with more specialized personnel and provide certain services above and beyond what was previously required.  The regulations went into effect on April 1, 2010.

Providence Pediatric Medical Daycare, Incorporated ("Providence") operates three facilities in the State of New Jersey that provide PMDC services to children under the age of six years who are technology-dependent or medically unstable. Other plaintiffs in this matter, represented by their mothers, are six children, all four years old or younger at the commencement of this case, who are Medicaid recipients with health problems that receive medical day care services at Providence.

In 2003, Providence expanded the size of its facility in Camden, New Jersey so that it could accommodate the growing

4

demand for PMDC services for children.  By virtue of its
expansion, of which the DHSS knew and approved, Providence's
Camden facility could provide medical day care for a total of 114
children, eighty-four more children than it previously served.
On September 24, 2003, the DHSS rejected and returned
Providence's expansion license application, denying Providence
the ability to serve more children.  In November 2003, based on
assurances from the DHSS, Providence resubmitted its application
but sought only to increase its slots for children by forty,
instead of its original request for eighty-four more slots.  That
same month, the DHSS again rejected and returned Providence's
application, citing as the reason for its denial a moratorium
dated November 3, 2003, which precluded the acceptance of
applications for new PMDC facilities or the expansion of existing
PMDC facilities.[3]

Similarly, in 2003, Providence purchased a building in
Berlin, New Jersey to serve as another PMDC facility.  Providence
submitted to the DHSS an application for a license with forty-
three slots for children.  Despite its involvement and ongoing
approvals with respect to the new facility, the DHSS rejected and
returned Providence's application in November 2003, grounding its
denial on the November 3, 2003 moratorium.  Though it denied
Providence's requests, the DHSS allowed other providers to open
or expand facilities in contravention of the moratorium.

_____

[3] The moratorium was extended indefinitely in August 2006.

5

In or around 2003, the DHSS also began to selectively enforce a New Jersey Medicaid regulation that caps the maximum daily census in any PMDC facility to twenty-seven children.  By virtue of the regulation, the DHSS permitted some PMDC facilities to exceed the twenty-seven-child limitation while forcing others, such as Providence, to comply with it.  The DHSS' enforcement of the cap did not account for a PMDC facility's size and licensed capacity to serve more than twenty-seven children at a time.  Given that Medicaid limitation, the DHSS refuses to pay for medical services provided by Providence to several of the Plaintiff-children on those days in which the daily census exceeds twenty-seven children.

Plaintiffs believe that the decisions of Defendants, including selective enforcement of the moratorium and twenty-seven-child cap and the issuance and implementation of stricter eligibility and pre-authorization rules, curtail the services available to Medicaid-eligible children in exchange for cost savings.  Plaintiffs allege that Defendants' decisions are arbitrary and capricious, unconstitutional, and were made without proper consideration of the needs of children who are technology-dependent or medically unstable or of the responsibilities and obligations of EPSDT service providers.  Because of the recent changes in New Jersey Medicaid regulations, Plaintiffs allege that children who currently receive necessary medical services from Providence will be deprived of those services.

In or around June 2010, Plaintiffs filed suit against Defendants, alleging violations of federal statutory rights under the Medicaid program and of the federal constitutional rights to equal protection and due process.  In October 2010, Defendants moved to dismiss Plaintiffs' claims.

## III. DISCUSSION

### A.   Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'" (citation omitted)).  Under the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis.  First, a claim's

factual and legal elements should be separated; a "district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1950).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Id.; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." (quoting Twombly, 550 U.S. at 556)). The defendant bears the burden of showing that no claim has been presented. Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).

**B.   Abstention**

Defendants insist that federal abstention doctrines, particularly the Pullman and Burford doctrines, militate against this Court's exercise of jurisdiction in this matter. To address

Plaintiffs' claims, Defendants warn, the Court must adjudicate federal constitutional claims that may otherwise be narrowed or obviated by the interpretation of state law by New Jersey state courts and that, depending on their resolution, may seriously harm or impair important state policies and interests.

Plaintiffs counter that Defendants identify no underlying state law issues that are ambiguous or equivocal, or that could mitigate the federal questions central to this case irrespective of any state court's interpretation or construction. Additionally, Plaintiffs surmise that their claims do not threaten any New Jersey administrative processes or public policies, nor do they challenge individual determinations made by state officials pursuant to a constitutionally valid statute; rather, their claims generally test the constitutionality of state regulations related to a matter of federal significance -- Medicaid.

The Court will address in turn each doctrine of abstention invoked by Defendants.

### 1. **Pullman**

For a federal district court to abstain under the <u>Pullman</u> doctrine,[4] three "'special circumstances'" must be present:

> (1) Uncertain issues of state law underlying the federal constitutional claims brought in federal court;

---

[4] The <u>Pullman</u> doctrine derives from the Opinion of the Supreme Court of the United States in <u>Railroad Commission of Texas v. Pullman Company</u>, 312 U.S. 496 (1941).

9

> (2) State law issues amenable to a state court interpretation that would obviate the need for, or substantially narrow, the scope of the adjudication of the constitutional claims;
>
> (3) A federal court's erroneous construction of state law would be disruptive of important state policies.

Afran v. McGreevey, 115 F. App'x 539, 542 (3d Cir. 2004) (quoting Chez Sez III Corp. v. Twp. of Union, 945 F.2d 628, 631 (3d Cir. 1991)).  "If the court finds these three circumstances, 'it must then make a discretionary determination as to whether abstention is in fact appropriate under the circumstances of the particular case, based on the weight of these criteria and other relevant factors.'"  Id. (quoting Chez Sez III Corp., 945 F.2d at 631).  Among those other factors are "the availability of an adequate state remedy, the length of time the litigation has been pending, and the impact of delay on the litigants."  Planned Parenthood of Cent. N.J. v. Farmer, 220 F.3d 127, 150 (3d Cir. 2000) (citation and internal quotation marks omitted).  "Abstention under Pullman therefore is discretionary and is generally exercised sparingly."  Afran, 115 F. App'x at 542.

Based on the circumstances and arguments before it, the Court does not find the Pullman doctrine to provide suitable grounds for abstaining from this matter.  By failing to identify any "[u]ncertain issues of state law underlying the federal constitutional claims" in this case, Afran, 115 F. App'x at 542, Defendants do not satisfy the Pullman doctrine's first prong.  Needless to say, New Jersey regulations relating to Medicaid are

10

central to the parties' dispute, but Defendants do not explain in what way or manner those regulations are "uncertain," or, for that matter, amendable to an interpretation that would vitiate the allegations of federal law violations iterated by Plaintiffs. The relative recency of the regulations' enactment and legal effect and the competency of New Jersey courts to adjudicate Medicaid disputes do not compel abstention under the circumstances of this case -- especially given the presumption favoring the exercise of federal court jurisdiction and the rare employment of the <u>Pullman</u> doctrine.

Therefore, the Court will not abstain from this case pursuant to the <u>Pullman</u> doctrine.

### 2.   **Burford**

To determine the applicability of the <u>Burford</u> doctrine,[5] a federal court must employ a "'two-step analysis'": (1) "ask 'whether timely and adequate state law review is available,'" and, if so, (2) "'determine if the case . . . involves difficult questions of state law impacting on the state's public policy or whether the district court's exercise of jurisdiction would have a disruptive effect on the state's efforts to establish a coherent public policy on a matter of important state concern.'" <u>Matusow v. Trans-County Title Agency, L.L.C.</u>, 545 F.3d 241, 247-48 (3d Cir. 2008) (citations omitted).

---

[5] The <u>Burford</u> doctrine derives from the Opinion of the Supreme Court of the United States in <u>Burford v. Sun Oil Company</u>, 319 U.S. 315 (1943).

To the first prong, timely and adequate state law review, it seems, would be available to resolve this matter.  New Jersey courts are competent and able to adjudicate matters involving alleged violations of federal constitutional and statutory law, including Medicaid law.  See, e.g., L.M. v. State of N.J., Div. of Med. Assistance and Health Servs., 659 A.2d 450, 459 (N.J. 1995); N.J. Hospice and Palliative Care Org. v. Guhl, 997 A.2d 298, 300 (N.J. App. Div. 2010).  Also, to challenge an administrative rule or regulation promulgated by a New Jersey state agency, a party may appeal as of right to the Appellate Division of New Jersey.  N.J. Ct. R. 2:2-3(a)(2).

To the second prong, this case unquestionably involves public policies and important interests of the State of New Jersey, specifically the regulation and administration of its PMDC centers, EPSDT services, and generally its Medicaid program.  However, notwithstanding the State's discretion and cooperation, at the heart of this case is Medicaid law, which by its very nature implicates federal questions and policies.  For that reason, inter alia, other federal courts have rejected the Burford doctrine and addressed similar or analogous claims to a state's Medicaid regulatory scheme.  See, e.g., Arkansas Med. Soc'y, Inc. v. Reynolds, 6 F.3d 519, 529 (8th Cir. 1993) ("[T]he Medicaid laws are routinely interpreted by federal courts and no specialized knowledge of state law is required."); Moore v. Medows, 2007 U.S. Dist. LEXIS 47087, at **8-9 (N.D. Ga. Jun. 28,

2007) (rejecting <u>Burford</u> abstention for claim concerning denial
of state Medicaid services given that the Medicaid program is a
federal interest), <u>rev. on other grounds</u>, 637 F.3d 1220 (11th
Cir. 2011); <u>Meachem v. Wing</u>, 77 F. Supp. 2d 431, 443-44 (S.D.N.Y.
1999) (rejecting <u>Burford</u> abstention because case alleging
Medicaid violations "involves issues that are not 'essentially
local' but rather involve federal funds and federal regulation in
an area in which the federal government has taken a keen
interest" and an area in which "federal oversight of the State's
administrative scheme for distributing . . . Medicaid benefits
already occurs via the regulatory scheme set up by the . . .
Medicaid Act[]").  Moreover, adjudication of this case, it
appears, will not require the specialized expertise or disruption
of state administrative proceedings that often warrants <u>Burford</u>
abstention.  At first blush, the New Jersey regulations and
policies at issue here do not seem to present particularly
"difficult" questions of state law, though the Court likely will
have to interpret and construct them just as any court would in
this instance.  Nevertheless, it is not apparent to the Court how
its involvement in this matter would harm any state interests or
public policies.

Defendants point to a single case in support of their
argument for abstention under <u>Burford</u>.  In <u>Bethphage Lutheran
Service, Incorporated v. Weicker</u>, the Second Circuit Court of
Appeals affirmed the district court's invocation of the <u>Burford</u>

doctrine to abstain from deciding claims that the state intended
to improperly reimburse the plaintiff, a Medicaid service
provider.  Bethphage Lutheran Serv., Inc. v. Weicker, 965 F.2d
1239, 1240 (2d Cir. 1992).  However, as Plaintiffs point out,
Bethphage Lutheran is distinguishable from the present matter
insofar as, *inter alia*, Plaintiffs are making a "systemic"
challenge to New Jersey's Medicaid law, and are not simply
pursuing a private claim for reimbursement.  In fact, in
Bethphage Lutheran, the Second Circuit panel made the following
observation:

> Bethphage next contends that the District
> Court erred in abstaining because federal
> courts have not hesitated in the past to
> exercise jurisdiction in provider suits
> brought under the federal Medicaid Act.
> However, as the defendants note, Bethphage
> does not cite to any case entertaining an
> individual provider challenge to the
> reasonableness of its own complex rate.  Those
> cases that involved challenges to rates
> involved systemic challenges to the rate-
> setting methodology.  The factors bearing on
> abstention would vary depending on whether the
> challenge was individual or systemic.  Only in
> the case of individual challenges would a
> District Court be concerned about creating
> funding inequities and an incentive for forum
> shopping.

Id. at 1247.  Indeed, Plaintiffs' suit in this case seems to hew
more closely to those other cases in which federal courts have
adjudicated claims brought under federal Medicaid law.

    For those reasons expressed above, the Court will not
abstain from this case pursuant to the Burford doctrine.
Accordingly, the Court will proceed to Defendants' motion to

dismiss for failure to state a claim upon which relief may be granted.

### C.    Failure to State a Claim

Defendants contend that Plaintiffs' complaint fails to state any claims for which relief may be granted.  By Defendants' account, Plaintiffs' claims are without merit.  On the contrary, Plaintiffs insist on the sufficiency of their pleadings and accuse Defendants of wrongfully relying on their own facts in seeking to dismiss the complaint.  The Court will address each of Plaintiffs' general causes of action -- violations of federal Medicaid law, equal protection, and due process -- in turn.

As a threshold matter, Plaintiffs present their claims pursuant to 42 U.S.C. § 1983.  Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff must show that: (1) the conduct challenged was committed by a person acting under color of state law; and (2) that the conduct deprived him of his rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005).

15

### 1.   Federal Medicaid Law

At this time Defendants do not expressly challenge the assertion that Plaintiffs may bring a private cause of action under Section 1983 to enforce rights conferred to them by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.*, commonly known as the "Medicaid Act."[6]  Rather, in this motion, Defendants simply posit that Plaintiffs' claims lack merit and are contravened by the facts surrounding the adoption and implementation of the New Jersey regulations at issue in this case.

Based on their extensive factual allegations, Plaintiffs allege that Defendants have violated numerous provisions of the Medicaid Act, including, *inter alia*, 42 U.S.C. §§ 1396a(a)(8),[7] 1396a(a)(10)(B),[8] and 1396a(a)(30)(A).[9]  The crux of Plaintiffs'

---

[6] To this point, courts have agreed that such actions are legitimate under certain Medicaid provisions. See, e.g., Sabree v. Richman, 367 F.3d 180 (3d Cir. 2004).

[7] Section 1396a(a)(8) reads: "A State plan for medical assistance must -- provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals[.]"  42 U.S.C. § 1396a(a)(8).

[8] Section 1396a(a)(10)(B) reads, in pertinent part:

> A State plan for medical assistance must -- provide -- that the medical assistance made available to any individual described in subparagraph (A) --
>
> (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual,

16

claims are that the new regulations promulgated by Defendants harm the efficiency and economy of and accessibility to the PMDC program while also diminishing the quality of care it provides to eligible children.

The Court agrees with Plaintiffs that, when accepting their facts as true as this Court is bound to do on a motion to dismiss, they state a plausible cause of action under Medicaid law.  Defendants' general opposition to Plaintiffs' claims rests more on the merits of those claims, and the facts and evidence surrounding them, than on their facial plausibility.  In fact, a

---

and

> (ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A)[.]

42 U.S.C. § 1396a(a)(10)(B).

[9] Section 1396a(a)(30)(A) reads, in pertinent part:

> A State plan for medical assistance must -- provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan . . . as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area[.]

42 U.S.C. § 1396a(a)(30)(A).

substantial portion of Defendants' arguments in support of their motion relates to the purposes and justifications for the regulations at issue.  That potentially legitimate purposes and justifications undergird and animate the regulations may or may not cast some doubt on the ultimate validity of Plaintiffs' claims, but they do not prove summarily that Plaintiffs have failed to state a colorable cause of action.[10]  Needless to say, those considerations must be addressed in a motion for summary judgment or during trial.  A motion to dismiss is not the proper avenue through which to adjudicate the substantive merits of a plaintiff's claim.

By way of an example of their arguments for dismissal, Defendants point out that PMDC facilities are not the exclusive providers of EPSDT services in the State of New Jersey and thus are not entitled to reimbursement relating to all EPSDT recipients.  Children in need of EPSDT services, Defendants say, may receive the same services through other types of providers and facilities.  Plaintiffs, however, counter that the comprehensive services furnished by PMDC facilities are not being provided elsewhere in an effective manner, consistent with the mandates of Medicaid, and that children are not receiving those services that their physicians have designated as medically

---

[10] After all, it appears that, in spite of whatever determinations may support the regulations, Plaintiffs challenge the process, or lack thereof, employed to reach those determinations.

necessary.  Whichever version may be true is irrelevant at this time; instead, the only salient consideration is that Plaintiffs allege facts that state what may be violations of federal law.

In addition, Defendants rely on affidavits and documentation beyond the pleadings in support of their Motion to Dismiss and, moreover, the enactment of their regulations.  The Court finds it improper to consider and decide this motion in connection with those submissions.  Ultimately, those submissions or the information contained therein may prove dispositive to this case. In other words, the facts and evidence presented by Defendants may or may not quash Plaintiffs' claims.  But, again, a motion for summary judgment, with an appropriate response by Plaintiffs, presents the proper occasion for this Court to consider any evidence and reach the merits of this case.

Therefore, for the reasons stated above, Plaintiffs have stated claims under Section 1983 for violations of the Medicaid Act.  With respect to those claims, Defendants' Motion to Dismiss is denied.

### 2.  Equal Protection

The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To proffer an equal protection claim, a plaintiff must allege that he or she "has been treated differently from persons who are similarly situated."  Renchenski

v. Williams, 622 F.3d 315, 337 (3d Cir. 2010).  Ultimately, "[i]f state action does not burden a fundamental Constitutional right or target a suspect class, the challenged classification must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  Id. (quoting Doe v. Pennsylvania Bd. of Prob. and Parole, 513 F.3d 95, 107 (3d Cir. 2008)).

In their complaint, Plaintiffs allege that Defendants violate the equal protection guarantee by arbitrarily and selectively enforcing certain regulations, specifically the twenty-seven-child limitation for PMDC facilities and the moratorium on building new PMDC facilities or expanding preexisting ones.  According to Plaintiffs' averments, Defendants have prohibited Providence from expanding its facilities and from serving in excess of twenty-seven children a day, while allowing other PMDC facilities, including ones in Mercer County, New Jersey, to do so.  As a result, children in other counties are receiving medical assistance that Plaintiff-children may be denied.

Plaintiffs' allegations relating to equal protection satisfy the federal pleading standard, and thus Plaintiffs state a claim for which relief may be granted.  Though Defendants assert a rational basis for their uneven regulatory enforcement, that argument is best reserved for a subsequent motion or hearing, for it concerns facts and evidence beyond the scope of Plaintiffs'

complaint.  Defendants' patent disagreement with Plaintiffs'
facts also cannot undermine the plausibility of Plaintiffs'
claims at this stage of litigation.  For present purposes,
Plaintiffs' allegations are sufficient to survive a motion to
dismiss.

Therefore, with respect to Plaintiffs' equal protection
claim, Defendants' Motion to Dismiss is denied.

### 3.   Due Process

Lastly, Plaintiffs allege violations to both their
procedural and substantive due process rights.

The Fourteenth Amendment decrees that no State shall
"deprive any person of life, liberty, or property, without due
process of law."  U.S. Const. amend. XIV, § 1.  "To prevail on a
claim under § 1983 for deprivation of procedural due process
rights, a plaintiff must allege that (1) he was deprived of an
individual interest that is encompassed within the Fourteenth
Amendment's protection of 'life, liberty, or property,' and (2)
the procedures available to him did not provide due process of
law."  Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d
176, 194 (3d Cir. 2009) (citation and internal quotation marks
omitted).  Thus, when evaluating a claim for procedural due
process, the court "first must determine whether the asserted
interest is encompassed within the Fourteenth Amendment's
protection of life, liberty, or property; if so, [the court] then
ask[s] whether the procedures available provided the plaintiff

with adequate due process." <u>Solomon v. Phila. Hous. Auth.</u>, 143
F. App'x 447, 452 (3d Cir. 2005).

> Procedural due process does not protect
> every benefit; rather, to have a property
> interest in a benefit, a person must clearly
> have more than an abstract need or desire and
> more than a unilateral expectation of
> receiving the benefit.  In constitutional
> parlance, the claimant must have a legitimate
> claim of an "entitlement."  Entitlements,
> however, are not established by the
> Constitution; rather, they are created and
> defined by existing rules or understandings
> that stem from an independent source, such as
> state law.  A claimant must show an
> entitlement to a property interest created by
> a state statute or regulation or arising from
> government policy or a mutually explicit
> understanding.

<u>Culinary Serv. of Del. Valley, Inc. v. Borough of Yardley</u>, 385 F.
App'x 135, 141 (3d Cir. 2010) (citations omitted).

Furthermore, under some circumstances, the denial of or
interference with a property interest may violate substantive due
process as well.  "[E]xecutive action violates substantive due
process only when it shocks the conscience but [] the meaning of
this standard varies depending on the factual context."  <u>UA
Theatre Circuit, Inc. v. Twp. of Warrington</u>, 316 F.3d 392, 399-
400 (3d Cir. 2003).

Plaintiffs allege an infringement upon their procedural and
substantive due process rights by virtue of Defendants'
regulations.  Defendants counter that Providence, as a Medicaid
provider, has no property interests in its provision of services
or receipt of reimbursement in the Medicaid program -- an

assertion to which Plaintiffs ostensibly agree.  However, according to Plaintiffs, the twenty-seven-child limitation and the moratorium on new or expanded PMDC facilities violate Providence's property interests in its PMDC licenses and its physical facilities.  Defendants do not challenge directly, or satisfactorily, this contention proffered by Plaintiffs in response to the Motion to Dismiss.

It is plausible that Plaintiffs may have a property interest in their PMDC licenses or the ownership and use of their physical facilities.  Cf. Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000) (noting that "'all of these cases involving zoning decisions, building permits, or other governmental permission required for some intended use of land owned by the plaintiffs' implicated the kind of property interest protected by substantive due process" (quoting Indep. Enter., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 n.12 (3d Cir. 1997) (internal citation omitted))); Sea Girt Rest. and Tavern Owners Assoc., Inc. v. Borough of Sea Girt, 625 F. Supp. 1482, 1488 (D.N.J. 1986) (finding that a liquor license constitutes "an interest in property for purposes of federal due process analysis").  The Court need not decide this issue conclusively at this time.  Suffice it to say, however, the Court, without more, cannot be sure that absolutely no property interest has been articulated in this matter that would warrant due process of law.

For that reason, and because Defendants have not carried their burden on this motion, the Court, with respect to Plaintiffs' due process claims, will deny Defendants' Motion to Dismiss, without prejudice.  Defendants, if they so choose, may challenge the plausibility of Plaintiffs' due process claims in a subsequent motion.

**IV.**   **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is denied.[11]  An Order consistent with this Opinion will be entered.


Dated: June 28, 2011              /s/ NOEL L. HILLMAN
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[11] Defendants also filed a motion seeking an extension of time to file their reply brief in this matter.  Defendants have since filed that brief.  Given that the Court has accepted and considered Defendants' reply brief, their motion to extend is granted *nunc pro tunc.*