```
                UNITED STATES DISTRICT COURT
                   DISTRICT OF NEW JERSEY
_____

PROVIDENCE PEDIATRIC MEDICAL
DAYCARE, INC., et al.,

          Plaintiffs,           Civil No. 10-2799 (NLH/KMW)

v.
                                         OPINION
POONAM ALAIGH, et al.,

          Defendants.
_____
```

**APPEARANCES:**

Thomas Kane
Anthony Argiropoulos
Robert M. Travisano
Epstein Becker & Green, P.C.
One Gateway Center, 13th Floor
Newark, New Jersey 07102

　　*Counsel for Plaintiff Providence Pediatric Medical Daycare, Inc.*

John J. Hoffman, Acting Attorney General of New Jersey
　　by　　Michael James Kennedy, Deputy Attorney General
R.J. Hughes Justice Complex
P.O. Box 112
Trenton, New Jersey 08625

　　*Counsel for Defendants*

**HILLMAN, District Judge:**

　　Presently before the Court is the second motion [Doc. No. 171] for summary judgment filed by Defendants Poonam Alaigh, Jennifer Velez, and John Guhl (collectively, "Defendants"). The motion is opposed by Plaintiff Providence Pediatric Medical Daycare, Inc. (hereafter, "Providence"). Providence also filed

a cross-motion for additional discovery pursuant to Fed. R. Civ. P. 56(d) [Doc. No. 180].

It its June 30, 2015 Opinion and Order, the Court granted summary judgment in favor of Defendants on all claims except to the extent Providence sought prospective injunctive and declaratory relief against Alaigh, Velez and Guhl in their official capacities.  Defendants now argue this remaining claim is moot, and for the following reasons, the Court agrees.

**I.    BACKGROUND**

The background of this case was set forth at length in the Court's June 30, 2015 Opinion, Providence Pediatric Med. DayCare, Inc. v. Alaigh, 112 F. Supp. 3d 234 (D.N.J. 2015).  In brief, Providence is a pediatric medical day care ("PMDC") facility overseen by the New Jersey Department of Health that provides medically necessary services to "technology-dependent children" or children with complex medical needs in an ambulatory care setting.

PMDC facilities must meet licensing standards established by the Department of Health at N.J.A.C. 8:43J-1.1, et seq.  To obtain a new license, PMDCs must complete an application process.  On November 16, 2009, the Department of Health adopted the current regulations governing PMDC providers in New Jersey.  One of the regulations prohibited facilities from enrolling more than twenty-seven children.

On November 6, 2003, all licensed PMDCs were notified that the Department of Health had recently become aware that some facilities exceeded the twenty-seven child limit.  In addition, on November 3, 2003, a moratorium was imposed on the acceptance of applications for licenses for new PMDC facilities and the expansion of existing PMDC facilities.

On September 23, 2003, prior to the moratorium, Providence submitted an application to the Department of Health to expand its Camden facility from thirty slots to 114 slots.  The application was rejected apparently because the proposed facility exceeded the twenty-seven student cap.  Providence then resubmitted the application to expand its Camden facility, as well as an application for licensure of a new facility in Berlin, New Jersey, in November 2003.  Although the applications were submitted under cover letter dated November 2, 2003, they were sent via overnight mail in an envelope dated November 13, 2003.

Providence's applications were returned because they were submitted after the moratorium on applications was published. Providence alleges that other facilities were granted licenses during the moratorium and accordingly, Providence alleges it faced disparate treatment.  In its prior Opinion, the Court found that Providence had raised a question of fact as to

3

whether other PMDCs which ultimately received licenses during the moratorium were treated differently.

The moratorium, entered in 2003, did not expire until November 1, 2012.  During the moratorium, the Department of Health allowed Providence to transfer the license for an existing facility in Lawnside to Camden, giving it two facilities in Camden.  Since the moratorium was lifted, Providence opened a new facility in Berlin, New Jersey, which was licensed on December 5, 2014.  Consequently, both facilities Providence sought to license during the moratorium have since been approved.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is

4

"material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(citing Anderson, 477 U.S. at 255, 106 S. Ct. 2505).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323, 106 S. Ct. 2548 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see also Singletary v. Pa. Dept. of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case'

5

when the nonmoving party bears the ultimate burden of proof.")(citing Celotex, 477 U.S. at 325, 106 S. Ct. 2548).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S. Ct. 2548. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s.]'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[ ] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322, 106 S. Ct. 2548). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

### III. **DISCUSSION**

Plaintiff's only remaining claim is an equal protection claim against Defendants in their official capacities. The Fourteenth Amendment to the United States Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

6

To prevail on an equal protection claim, a plaintiff must allege that he or she "has been treated differently from persons who are similarly situated." Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010), cert. denied, 563 U.S. 956, 131 S. Ct. 2100, 179 L. Ed. 2d 926 (2011) (citation omitted). Ultimately, "[i]f state action does not burden a fundamental Constitutional right or target a suspect class, the challenged classification must be upheld if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. (quoting Doe v. Pa. Bd. of Prob. & Parole, 513 F.3d 95, 107 (3d Cir. 2008)).

The basis of Providence's equal protection claim is that Defendants: (1) selectively enforced the twenty-seven student limit as to Providence but allowed other facilities to exceed the cap; (2) approved other facilities' applications to open PMDC facilities after the moratorium was entered while denying Providence's applications; and (3) applied the twenty-seven student limit to PMDC facilities that accept Medicaid children, but not to PMDC facilities that do not accept Medicaid children.

The Court granted summary judgment in favor of Defendants on two of Providence's equal protection theories, but found there was an issue of fact as to whether Defendants approved some facilities during the moratorium while rejecting Providence's applications.

7

Defendants now argue that Plaintiff's only remaining claim for prospective injunctive and declaratory relief is moot. Defendants argue that Providence's claim concerns past conduct and there is no alleged ongoing harm. Further, Defendants point out that Providence has received the licenses it claimed it was denied. Providence argues that its claim is not moot because: (1) the cessation of illegal conduct does not moot a claim for injunctive relief; (2) Defendants' disparate treatment is ongoing; and (3) Providence is the prevailing party and entitled to attorneys' fees.[1]

Article III, Section 2 of the Constitution limits the "judicial power" of the United States to the resolution of certain "cases" and "controversies." <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State</u>, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). "The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request ... in terms that have a familiar ring to those trained in the legal process." <u>Id.</u> The "case" or "controversy" requirement is enforced through a number of justiciability doctrines, which include standing, ripeness,

---

[1] In their brief Defendants reargue that Providence was not similarly situated to other PMDC providers issued licenses during the moratorium. However, the Court previously determined that was a disputed fact and will not revisit the issue.

mootness, the political-question doctrine, and the prohibition on advisory opinions. Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009).

"[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). A party who seeks to invoke the Court's jurisdiction must demonstrate that he has standing by showing that he has suffered an "actual or threatened injury," that the injury is traceable to the conduct of the defendant, and that the injury is "likely to be redressed by a favorable decision." Valley Forge Christian Coll., 454 U.S. at 472, 102 S.Ct. 752 (internal quotations omitted). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103–04, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "[A] plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Lewis v. Casey, 518 U.S. 343, 358 n.6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).

Even if a plaintiff has standing at the time suit is instituted, the case may be dismissed if it becomes moot. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The mootness doctrine requires that "an actual controversy [is] extant at all stages of review, not merely at the time the complaint is filed." Steffel v. Thompson, 415 U.S. 452, 459 n.10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). "'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" Friends of the Earth, 528 U.S. at 189, 120 S.Ct. 693 (quoting United States v. Concentrated Phosphate Export Assn., 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968)). Mootness may not become an issue until the case has been brought and litigated. Id. at 191, 120 S.Ct. 693.

There is an exception to the mootness doctrine where conduct is capable of repetition yet evades review. Spencer v. Kemna, 523 U.S. 1, 17, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). This exception applies only where: "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to

10

the same action again." Id. (internal quotation marks omitted).[2] "It is the burden of the moving party to establish that the issue is 'capable of repetition yet evading review.' 'Capable of repetition' is not a synonym for 'mere speculation;' it is a substantive term on which the moving party must provide a reasonable quantity of proof—perhaps even by the preponderance of the evidence." New Jersey Tpk. Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 33 (3d Cir. 1985).

Providence challenges mootness on the grounds it has a reasonable expectation that it will again be subject to disparate treatment. Plaintiff contends that it has evidence which shows that Defendants have already subjected Providence to disparate treatment and asks the Court to reopen discovery so that Providence can uncover more evidence. In her declaration, Leeanna Roman Lozada, Providence's CEO, cites several examples of alleged disparate treatment Providence has suffered, which includes:

- initial denial and unreasonable delay in approving a highly qualified doctor as a back-up facility administrator;

- arbitrary denial of a qualified administrator candidate;

---

[2] The Supreme Court's "capable-of-repetition" doctrine only applies where the two circumstances are simultaneously present. Spencer v. Kemna, 523 U.S. 1, 17, 118 S. Ct. 978, 988, 140 L. Ed. 2d 43 (1998). Providence does not squarely address the first requirement, but nonetheless the Court finds it has not satisfied the second.

   • denial and waiver rejection of a candidate for an administrator position and subsequent denial based upon alternative grounds and offering of a waiver;

   • denial of a motor vehicle classification waiver while a waiver was given to a similarly situated facility

   • unreasonable delay in deciding if an administrator candidate could receive a waiver of qualification;

   • the issuance of a fine on July 1, 2015 for an alleged violation emanating from a an inspection that took place in February 2014; and

   • the next day denial of a corrective action plan, without explanation.

Lozado Decl. ¶¶ 12-23, 24-32, 33-48, 49-55, 56-62, 63-64, 65-58. None of these allegations, however, concern Providence's sole remaining equal protection claim that it was treated differently in the license approval process during the moratorium. Rather these allegations appear to assert a new claim, in Providence's own words, that the Department of Health "continually applied regulations to Providence in an arbitrary way." Id. ¶ 20.

  Most significantly, the moratorium was lifted over three years ago. Since that time, Providence makes no allegations regarding its ability to obtain further licenses or the likelihood of another moratorium. Providence's only support for its proposition that its injury will be repeated appears to be "mere speculation." New Jersey Tpk. Auth., 772 F.2d at 33. At best, Providence's evidence relates to a wholly new claim not

12

part of Providence's complaint. In other words, the allegations in Lozado's declaration are not material to Providence's remaining claim that the moratorium was selectively enforced against Providence.

Nonetheless, it is Defendants' "heavy burden" to show "there is no reasonable expectation that the wrong will be repeated." United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S. Ct. 894, 897, 97 L. Ed. 1303 (1953). Defendants have shown that the moratorium expired in 2012 and since then Providence has obtained the licenses it sought. In the absence of evidence suggesting that Providence continues to face disparate treatment during a licensing moratorium the Court is asked to speculate that: (1) there will be a new moratorium on licensing for PMDCs in New Jersey and (2) Defendants will treat Providence disparately by permitting other PMDCs to obtain licenses while preventing Providence from obtaining licenses. This is wholly speculative. New Jersey Tpk. Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 33 (3d Cir. 1985) (finding claim moot where nothing in the record showed a "likelihood of a similar chain of events, even were we to refrain from such a fact-specific digression."); New Jersey Tpk. Auth., 772 F.2d at 34 (3d Cir. 1985) (finding action moot where the court could only speculate that there is a reasonable expectation of repetition); Farmland Dairies, LLC v. Passaic Valley Sewerage

13

Comm'rs, No. 05-5544, 2007 WL 1686498, at *4 (D.N.J. June 11, 2007) (finding claim moot particularly where the parties continued to exchange services without incident).  Accordingly, the Court finds that Defendants have satisfied their burden of showing Providence's remaining claim is moot.

Providence also seeks declaratory relief.  The Court notes that it previously ruled that Providence could not obtain monetary damages and injunctive relief is not available for the reasons discussed above.  Therefore, even if Providence were to succeed in obtaining a declaration that Defendants acted unlawfully, that finding would not result in any action or cessation of action.  The Supreme Court has explained:

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces- the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement-what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.

Hewitt v. Helms, 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (emphasis in original).  Declaratory relief here

14

would amount to nothing more than an advisory opinion regarding the wrongfulness of Defendants' past conduct. The Court will not issue a declaration that Defendants treated Providence disparately where there is no longer a redressable injury stemming from that alleged conduct. Accordingly, Providence's remaining claim will be dismissed.

Considering Providence's cross-claim to reopen discovery, the Court finds Providence has not given "specified reasons" why further discovery is warranted. Fed. R. Civ. P. 56(d). Further, Providence's request for additional discovery on the issue of disparate treatment during the licensing process after it successfully obtained two licenses since the beginning of the moratorium supports Defendants' argument that there is no justiciable issue before the Court. Accordingly, the Court declines to reopen discovery to delve into new issues beyond Providence's complaint.

Finally, the Court turns to Providence's argument that it is a prevailing party entitled to attorneys' fees pursuant to 42 U.S.C. § 1988(b) ("In any action or proceeding to enforce a provision of section[ ] ... 1983 ... of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."). See, e.g., National Amusements Inc. v. Borough of Palmyra, 716 F.3d 57, 64 (3d Cir. 2013) (quoting Hensley v.

15

Eckerhart, 461 U.S. 424, 433 (1983)) ("Parties are considered 'prevailing parties' if 'they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"). However, a plaintiff does not become a prevailing party solely because his lawsuit creates a voluntary change in the defendant's conduct. Singer Mgmt. Consultants, Inc. v. Milgram, 650 F.3d 223, 228 (3d Cir. 2011) (citation omitted). "Rather, the change in the parties' legal relationship must be the product of judicial action." Id.

Here, although Providence received the two licenses it sought, it was not the result of judicial action. Further, summary judgment was granted to Defendants on all of Providence's claims. Accordingly, the Court finds Providence is not a prevailing party entitled to attorneys' fees.

**IV. CONCLUSION**

Defendants' motion for summary judgment on Providence's remaining equal protection claim is granted on the grounds the claim is moot. The Court also finds that Providence is not the prevailing party in this litigation.

An Order consistent with this Opinion will be entered.

s/ Noel L. Hillman<br>NOEL L. HILLMAN, U.S.D.J.

Date: March 9, 2016

At Camden, New Jersey